UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| MAUREEN A. STANLEY, | ) | CIV. 05-5104-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING IN PART |
| | ) | AND DENYING IN PART |
| PATRICK R. HALL, | ) | MOTIONS FOR SUMMARY |
| LEWIS KIRKEBY HALL PROPERTY | ) | JUDGMENT |
| MANAGEMENT, INC., and | ) | |
| SANDSTONE RIDGE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

Defendants, Patrick R. Hall, Lewis Kirkeby Hall Property Management, Inc. (LKH), and Sandstone Ridge, Inc. (Sandstone), move for summary judgment on the majority of the claims made by plaintiff, Maureen A. Stanley, in her second amended complaint. Stanley opposes the motions in part. The motions are granted in part and denied in part.

## FACTUAL BACKGROUND

The claims in this case revolve around incidents that are alleged to have occurred during Stanley's employment at Sandstone Ridge Apartments. The Sandstone Ridge Apartments are an upscale apartment complex in Rapid City, South Dakota. The land was developed by Sandstone Ridge, Inc., a corporation formed for that purpose. Hall, Michael Tennyson, and Kenneth Kirkeby were originally equal shareholders of Sandstone. Sandstone began renting to tenants in early 1997.

In August of 1996, Sandstone entered into a management contract with LKH.  LKH is a management company which manages rental property for its customers.  LKH has four equal shareholders:  Hall, Kirkeby, Susan Shepherd, and Larry Lewis.

Although Stanley disputes the amount of involvement Sandstone and Hall retained in the management of Sandstone Ridge Apartments, defendants assert that LKH controlled the daily operation of the complex.  Defendants also assert that Sue Shepherd was the managing shareholder of LKH during all times relevant to the claims filed, and her duties included hiring, firing, and managing employees.  As a part of the management contract, LKH negotiated rent free space for its employees, who were in turn required to live on-site at Sandstone Ridge Apartments.

Stanley began a consensual relationship with Hall in the fall of 1996. Soon thereafter Stanley met with Sue Shepherd, and Stanley was offered and accepted a job which involved work at the Sandstone Ridge Apartments for LKH.  During the period of May 1997 through January 2003, Stanley lived at Sandstone Ridge Apartments in her capacity as interim resident manager and resident manager of the complex.  During the period of 1997 through October 2002, Hall also lived at the complex.

Defendant Hall characterizes his relationship with Stanley as tumultuous, and at a minimum, Stanley claims that during the relationship

2

Hall was verbally abusive, addressing her with a variety of derogatory names. During their relationship numerous gifts were exchanged, and Hall purchased a Jeep for Stanley.  Stanley and Hall dispute whether the Jeep was intended only for Stanley's use or was an outright gift.

The relationship between Stanley and Hall ended in February of 2002. Stanley continued to work at the Sandstone Apartments after the relationship ended, and she received two raises subsequent to February of 2002.  Stanley alleges that during her relationship, but with increased severity after the relationship with Hall ended, she was the subject of repeated sexual harassment by Hall.

The sexual harassment alleged by Stanley came in a variety of forms. Stanley alleges that she was repeatedly verbally abused by Hall's liberal use of pejoratives, as well as references to sexual favors.  This verbal abuse was also testified to by co-workers of Stanley, as well as Tennyson, one of the original co-owners of Sandstone.  Stanley also alleges physical abuse.  One such incident involves allegations that Hall, after being told he could no longer play any role in the management of Sandstone, became intoxicated, broke into her Jeep, destroyed a number of her CDs, and upon seeing her followed her up to her apartment.  Hall admits to substantial portions of this incident.  Stanley also alleges that on numerous times Hall went to the door of her apartment and attempted to gain entry.

3

At various times during her employment, Stanley reported these incidents to LKH.  This conduct prompted a number of meetings, but although she was asked, she never put any of her complaints into writing.  Neither LKH nor Sandstone had a sexual harassment policy in place during the relevant time period.  After a variety of measures were attempted to control the behavior of Hall, the shareholders of Sandstone eventually found it necessary to relieve Hall of his authority at Sandstone Ridge.  Shortly after Hall was notified that he was relieved of all authority in November of 2002, Hall bought out his Sandstone partners.  Hall asserts that he bought out Sandstone and terminated the contract with LKH in an attempt to make the apartments more profitable.  Stanley asserts that Hall purchased the entire ownership interest in Sandstone in an attempt to regain control over her.  Shortly after acquiring a full interest in the property, Hall asserts that he terminated the management contract with LKH and with it all of the contracts of the on-site employees living at Sandstone.  Hall further asserts that he gave notice to each affected employee, along with an invitation to reapply for their positions.  Stanley admits receiving a letter explaining that she was invited to reapply for her position with Hall.  Stanley did not reapply.

Stanley also alleges a variety of similar acts of behavior by Hall with regard to other females under his supervision, which she asserts demonstrates his general attitude towards female employees.

4

In her second amended complaint, Stanley alleges that the harassment resulted in sexual harassment and retaliation under Title VII.  She asserts parallel claims under South Dakota state law.  The employment law claims are asserted against Hall individually, as well as against Sandstone and LKH.  In addition, Stanley alleges the following state law claims:  invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress, civil battery, civil assault, interference with a business relationship, fraud and deceit, slander, stalking, and witness tampering.  Stanley alleges that Sandstone and LKH are vicariously liable on each of these claims.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.  Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

5

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record.  Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980).  The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that genuine issue exists.  Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

## DISCUSSION

**I.    Title VII Claims**

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against employees with respect to their compensation, terms, conditions, or privileges of employment, because of race, color, religion, sex, or national origin.  See 42 U.S.C. § 2000e-2(a)(1) (2004).  Defendants move for summary judgment on the Title VII claims made by Stanley.  Hall and Sandstone argue that the jurisdictional requirements of Title VII are not met, whereas LKH argues that Hall's behavior does not rise to the level of a colorable claim under Title VII.

6

**A.    Hall**

Hall argues that he is not an "employer" as defined by Title VII and therefore cannot be subject to liability.  Stanley does not respond to this argument.

For purposes of Title VII, an "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ."  42 U.S.C. § 2000e(b).  The Eighth Circuit has never explicitly addressed whether an individual can be subject to liability under Title VII.  In <u>Lenhardt v. Basic Institute of Technology, Inc.</u>, 55 F.3d 377 (8th Cir. 1995), the court was faced with an analogous question, whether an individual could be subject to liability under the Missouri Human Rights Act (MHRA).

The court first determined that it was appropriate to construe "employer" under the MHRA in a manner consistent with its construction under Title VII.  <u>Lenhardt</u>, 55 F.3d at 380.  After surveying sister circuits, the court in <u>Lenhardt</u> found:

> The consensus of these courts is that Title VII actions brought against individual employees are against those employees in their "official" capacities, and that liability can be imposed only upon the common employer of the plaintiff and of the individual fellow employees who are named as defendants.  Under this view, the language "any agent of such a person" is designed to incorporate the principles of respondeat superior into Title VII

rather than to expose either supervisors or co-workers to personal liability in employment discrimination cases.

Id. at 380.

The "employee" at issue in Lenhardt was the employer's president, sole director, and sole shareholder.  Id. at 379.  The factual situation in Lenhardt is very similar to the factual situation in this case, as Hall was a part owner of both Sandstone and LKH.  As discussed in more detail below, the parties dispute whether any acts by Hall were done on behalf of LKH or on behalf of Sandstone.  Regardless, Stanley never argues that she was employed by Hall in his individual capacity, and the record does not show any objective evidence to indicate that to be true.  Although Lenhardt did not explicitly address Title VII liability for managers and supervisors in an individual capacity, there is nothing to indicate that the Eighth Circuit would treat a Title VII case differently.  See Waag v. Thomas Pontiac, Buick, GMC, Inc., 930 F. Supp. 393, 407 (D. Minn. 1996).  Accordingly, with respect to Stanley's Title VII claim against Hall in his individual capacity, Hall's motion for summary judgment is granted.

## B.    Sandstone

In its memorandum in support of its motion for summary judgment, Sandstone asserts that it is entitled to summary judgment on its Title VII claims because it is not an "employer" as defined by the Act.  For purposes of

Title VII, an employer is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees. . . ."  42 U.S.C.A. § 2000e(b). Stanley does not dispute that Sandstone has fewer than fifteen employees, but rather argues that LKH and Sandstone are "joint employers" for purposes of the numerosity requirement of Title VII, and that when the employees of both entities are aggregated the requirement is met.

The Eighth Circuit adopted the "joint employer" doctrine for purposes of imposing Title VII liability in Baker v. Stuart Broadcasting, Inc., 560 F.2d 389 (8th Cir. 1977).  The court in Baker recognized that it must liberally construe the terms in Title VII, including the term "employer," in order to "carry out the purposes of Congress to eliminate the inconvenience, unfairness and humiliation of racial discrimination."  Id. at 391 (citing Parham v. Southwestern Bell Telephone, 433 F.2d 421, 425 (8th Cir. 1970)).

"In a 'joint employer' relationship . . . there is no single integrated enterprise.  The joint employer analysis assumes separate legal entities exist, but that they have chosen to handle certain aspects of their employer-employee relationships jointly."  Scheidecker v. Arvig Enterprises, Inc., 122 F. Supp. 2d 1031, 1037-38 (D. Minn. 2000).  The Eighth Circuit uses four factors to analyze the characteristics of two entities to determine whether a joint employer finding is appropriate: (1) the interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common

9

ownership or financial control.  <u>Baker</u>, 560 F.2d at 392; <u>Pulitzer Publ'g Co. v.</u>
<u>National Labor Relations Bd.</u>, 618 F.2d 1275 (8th Cir. 1980); <u>Jarred v. Walters</u>
<u>Indus. Elec., Inc.</u>, 153 F. Supp. 2d 1095, 1098-99 (W.D. Mo. 2001).  These
factors were adopted from the standards promulgated by the National Labor
Relations Board.  <u>Baker</u>, 560 F.2d at 392.  Stanley argues that an application
of these factors requires that LKH and Sandstone be treated as joint employers
for purposes of Title VII liability.  Sandstone disagrees.

### 1.    Interrelation of Operations

Stanley alleges that a number of defendants' undisputed facts illustrate
the interrelation of Sandstone and LKH.  LKH employees, including Stanley,
were required to live on site at Sandstone.  LKH received as payment a
percentage of the rent collected at Sandstone.  Hall retained partial
involvement of Sandstone management because he was a shareholder living
on site.  Stanley was hired exclusively to work at LKH.  And Stanley was
required to be on call for work around Sandstone 24 hours a day.

Stanley also directs the court to a clause in the management agreement
between LKH and Sandstone which states in relevant part:

> [LKH] shall have authority to hire, supervise, and terminate on
> behalf of [Sandstone] all independent contractors and property
> employees, if any, reasonably required in the operation of such
> property; all such property employees are employees of
> [Sandstone].

App. by Plaintiff (Docket 110), Ex. 21.

Stanley argues that these facts show that there is an interrelationship of operations between the two companies.  Stanley points to the facts in Baker to suggest that because LKH provided "management services" to Sandstone, the companies are interrelated.  Baker makes no individual finding of "interrelatedness" but rather held that under the circumstances as a whole, in a situation where two companies which were owned entirely by the same individuals who also comprised the board of directors and officers for both corporations, the two companies were "joint employers."  Baker, 560 F.2d at 389.

Although there are few cases in the Eighth Circuit which look extensively at the interrelatedness prong, one case upon which Stanley relies is Jarred v. Walters Industrial Electronics, Inc., 153 F. Supp. 2d 1095 (W.D. Miss. 2001).  In Jarred the court found that there was an interrelationship between two entities when the companies shared the same building space, maintained an identical phone and fax number, and shared a common webpage, among other practices that objectively indicated that the two entities worked in conjunction.

In this instance, LKH and Sandstone never held out to the public that they were a single entity.  Defendants do assert that when Hall acted in an authority position, he was doing so in his authority as a co-owner of Sandstone and further, the management contract does state that the

11

employees hired by LKH are ultimately the employees of Sandstone.  These two facts, however, are not dispositive in creating a finding of "interrelatedness."

The relationship between LKH and Sandstone in this case more closely parallels the relationship discussed in Pulitzer Publishing Company, 618 F.2d at 1279.  In Pulitzer, the two entities were a newspaper publisher and a delivery service which contracted to deliver the newspapers.  The nature of the relationship between the two entities required some degree of interrelation; the delivery drivers followed the newspaper's instructions as to where to go, and occasionally took direction from newspaper employees.  Id. at 1279.  Nonetheless, the delivery company maintained sole responsibility over its employees and substantially controlled the terms and conditions of its employees.  Id.  The court in Pulitzer did not find that the two entities were "joint employers" despite the "close business relationship."  Id. at 1280.  It is true that there was a close relationship between LKH and Sandstone, but as in Pulitzer, that is the nature of the business.

### 2.    Common Management

Stanley asserts that because LKH and Sandstone had, in part, common ownership interests, the common management factor is met.  It is undisputed that Hall and Kirkeby possessed ownership interests in both LKH and Sandstone.  Sandstone contests that this joint ownership results in common

12

management, however, asserting that at all relevant times Shepherd, who had no interest in Sandstone, was the managing shareholder of LKH.  Therefore, defendants argue that there was no common management.

Again, Stanley cites <u>Baker</u> for finding common management.  In <u>Baker</u>, however, one man was president of both of the companies that were found to be joint employers, and he exerted substantial influence over other management personnel.  The fact that joint ownership is not synonymous with joint control is illustrated by the "joint employer" factors themselves, which reserve a separate factor to deal with common ownership.

In this case, Shepherd was the managing partner of LKH during all relevant times.  Shepherd did not have any ownership interest in Sandstone.  Further, Stanley has not argued, nor presented any evidence, that Hall had any significant influence over the decisions of Shepherd.

### 3.    Centralized Control of Labor Relations

Stanley asserts that centralized control of labor relations exists in this case because LKH employees were required to live at the Sandstone Apartments, and because Sandstone had the ability to "influence or affect workplace policy."  Plaintiff's Response (Docket 97) at 7.

Stanley cites <u>Jarred</u> which held that the factor was met when one president controlled both entities and had the ability to "establish and enforce canons of discipline upon employees of both entities."  <u>Jarred</u>, 153 F. Supp. 2d

at 1100.  In the passage cited by Stanley, <u>Jarred</u> states that "a mere
'observable degree of centralized control of labor relations' " fulfills the
centralized control of labor relations factor.  <u>Id.</u> (citing  <u>E.E.O.C. v. Financial
Assur., Inc.</u>, 624 F. Supp. 686 (W.D. Mo., 1985)).  The facts of <u>E.E.O.C.</u>
indicate more centralized control than was present in this case.  In <u>E.E.O.C.</u>
there was evidence that one entity issued policy directives over the other
entities' employees, participated in interviews of prospective employees, and
occasionally did salary reviews.  <u>Id.</u> at 690.

The facts in this case do not show that there was centralized control of
labor relations.  While it is undisputed that LKH employees were required to
live at Sandstone Apartments, part of those employees' duties included
around-the-clock maintenance and support for Sandstone tenants, which
would be difficult to fully perform if the employees lived anywhere else than
on-site.  It is not alleged that Hall played a role in hiring, firing, disciplining, or
any other significant employment decision. Any degree of influence exercised
by Hall in his capacity as a Sandstone owner was not sufficient to constitute
joint control.

### 4.    Common Ownership or Control

"The Eighth Circuit has recognized this final factor, 'common
ownership,' to be the least relevant in considering whether separate business
entities may properly be considered sufficiently integrated to warrant a unitary

treatment for Title VII statutory purposes." <u>Jarred</u>, 153 F. Supp. 2d at 1100. It is undisputed that Hall and Kirkeby, during the majority of the relevant time period, maintained an ownership interest in both Sandstone and LKH. The court also notes that unrelated persons maintained ownership interests in each entity.

"While none of these [four "joint employer"] factors, separately viewed, have been held controlling, stress has normally been laid upon the first three factors which reveal functional integration with particular reference to whether there is a centralized control of labor relations." <u>Pulitzer</u>, 618 F.2d at 1279. After reviewing the relationship between LKH and Sandstone, the court finds that the two entities should not be treated as joint employers for purposes of imposing Title VII liability. Although it is true that LKH and Sandstone had a close working relationship, the evidence does not indicate anything other than a typical relationship between a real property owner and a management company.

Stanley has failed to cite, and the court is unaware of any authority, in support of the proposition that a relationship between a management company and an ownership company per se requires a finding of joint employment. Because there is nothing to suggest that the relationship between LKH and Sandstone went beyond that of a typical management relationship, a finding of joint employment is not appropriate in this case.

15

Without a finding of joint employment, it is undisputed that Sandstone does not have the requisite number of employees required to meet the numerosity requirement of Title VII, and therefore, Sandstone's motion for summary judgment with regard to the Title VII claim is granted.[1]

### C.   LKH

Stanley alleges two theories of liability under Title VII: sexual harassment and retaliation.

#### 1.   Sexual Harassment

> Title VII now prohibits both quid pro quo harassment, where an employee's submission to or rejection of a supervisor's unwelcome sexual advances is used as the basis for employment decisions, and hostile work environment harassment, where the "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."

Tenge v. Phillips Modern Ag Co., 446 F.3d 903 (8th Cir. 2006) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

A quid pro quo claim has two significant advantages. "First, [w]hen a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of

---

[1]The court notes that granting Sandstone's motion on summary judgment on Stanley's Title VII claim does not leave her without a cause of action against Sandstone for sexual harassment. As discussed below, there is no numerosity requirement for her state law claim.

employment that is actionable under Title VII." Burlington Indus., Inc., v. Ellerth, 524 U.S. 742, 753-54, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998).  The second advantage is that "a tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer." Id. at 762. By contrast:

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of evidence, see Fed. Rule Civ. Proc. 8(c).  The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

Id. at 745.

In Burlington Industries, the Court noted at the outset, "[t]he terms *quid pro quo* and hostile worker environment are helpful, perhaps, in making a rough demarcation between cases in which threats are carried out and those where they are not or are absent altogether, but beyond this are of limited utility." Id. at 751.

Taking those distinctions into consideration, it is well established that there are four elements that must be established for a plaintiff to state a prima facie case under Title VII for sexual harassment by a supervisor.  See, e.g., Beard v. Flying J, Inc., 266 F.3d 792 (8th Cir. 2001).  Stanley must establish (1) that she was a member of a protected group, (2) that she was subjected to

unwelcome sexual harassment, (3) that the harassment was based on sex, and (4) that the harassment affected a term, condition, or privilege of her employment.[2]  Id.  Additionally, with regard to a hostile work environment claim, a defendant can present an affirmative defense if the defendant shows that "it exercised reasonable care to prevent sexual harassment and promptly corrected any sexual harassment that did occur."  Id. at 799.

### (a)      Member of a Protected Group

The fact that Stanley is a woman establishes that she is a member of a protected group.  Quick v. Donaldson Co., 90 F.3d 1372, 1377 (8th Cir. 1996) (stating that a plaintiff's status as either a man or a woman brings the plaintiff within the scope of Title VII).  LKH does not dispute that this element is established.

---

[2]There is some discrepancy in the briefs before the court as to the existence of a fifth factor, that "the employer knew or should have known of the harassment," thus requiring the plaintiff to present evidence on this factor. This factor must be shown when the alleged sexual harassment is committed by a co-worker.  See, e.g., Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 964-68 (8th Cir. 1999).  When the conduct is committed by a supervisor, however, the Supreme Court has held that an employer must present evidence that it acted in a sufficient manner to avoid the harassment as an *affirmative defense*. Burlington Indus., 524 U.S. 742, 764-65; Beard v. Flying J, Inc., 266 F.3d 792, 799 (8th Cir. 2001) (employing the four-factor test when the harassing conduct was alleged to have been committed by a supervisor).

### (b)        Subject to Unwelcome Sexual Harassment

The inquiry under this element is two prong:  the behavior alleged by a plaintiff must be both "sexual harassment" and "unwelcome."  Scusa, 181 F.3d at 966.  The Eighth Circuit recognizes a variety of conduct that qualifies as sexual harassment.  The qualifying conduct "includes sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature."  Quick, 90 F.3d at 1377 (citing 29 C.F.R. § 1604.11(a)).  "The harassment need not be explicitly sexual in nature, though, nor have explicit sexual overtones."  Id.  "Since sexual harassment can occur in many forms, it may be evidenced by acts of physical aggression or violence and incidents of verbal abuse."  Id.

In this case, Stanley alleges a variety of conduct that she argues is "sexual harassment."  She alleges that Hall repeatedly referred to her by sexually derogatory names and at one point made reference to the futility of his asking to receive a "blow job."  The use of derogatory names is supported by numerous affidavits, in addition to that of Stanley's.  Stanley alleges a number of acts of physical violence and aggression.  She alleges that after Hall was stripped of his authority to act on behalf of Sandstone, he became intoxicated, broke into the vehicle she was using and destroyed a number of compact discs, and proceeded to follow her up to her apartment.  Hall admits

to significant portions of this incident.  If true, these allegations are sufficient to make a finding of sexual harassment.

Conduct is considered "unwelcome" if "the employee did not solicit or invite it, and the employee regarded the conduct as undesirable or offensive." Moylan v. Maries County, 792 F.2d 746 (8th Cir. 1986).  The nature of these instances makes apparent the fact that they were "unwelcome."

Therefore, with respect to the second element of a prima facie case for Title VII sexual harassment, the court finds that Stanley has alleged sufficient evidence that, if proven, would support a finding of unwelcome sexual harassment.

### (c)   The Harassment Was Based Upon Sex

"An offensive workplace atmosphere does not amount to unlawful discrimination unless one gender is treated differently than the other." Duncan v. General Motors Corp., 300 F.3d 928, 933 (8th Cir. 2002).  LKH argues that Hall treated all employees poorly and that Stanley failed to create a material issue of fact as to whether the behavior of Hall was directed towards her as a result of her being a female.

Contrary to the assertions of LKH, Stanley does set forth evidence that Hall's actions towards her were based upon her status as a female.  Hall made reference to Stanley regarding the performance of sexual acts, and there is no indication that he made any similar comments to male employees.  Further,

20

there is testimony that Hall thought little of women's rights and had a tendency to treat women in a different manner.  In her brief in opposition to summary judgment on the Title VII claim, Stanley points to a number of different allegations regarding Hall's actions towards other female employees which tend to indicate that Hall had a discriminatory attitude toward women in general.

The Eighth Circuit has held, "[b]ecause an employer's past discriminatory policy and practice may well illustrate that the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination, this evidence should normally be freely admitted at trial." Hawkins v. Hennepin Tech. Ctr., 900 F.2d 153, 155-56 (8th Cir. 1990).  In Hawkins, the court held that by preventing the plaintiff from presenting evidence of a workplace atmosphere that "condoned sexual harassment," the plaintiff was unable to fairly present her claim.  Id. at 156.  A similar situation exists in this case.  Stanley has alleged numerous instances in which Hall has behaved in a sexually harassing manner towards females, which could assist a trier of fact in concluding that his behavior towards Stanley was based on the fact that she is a woman.

Therefore, with respect to the third element of a prima facie case for Title VII sexual harassment, the court finds that Stanley has alleged sufficient

evidence that, if proven, would support a finding that the alleged harassment directed upon her was based upon her status as a female.

> **(d)     The Harassment Affected a Term, Condition, or Privilege of Her Employment**

>> **(i)     Quid Pro Quo**

As discussed above, if a plaintiff successfully alleges quid pro quo harassment, this factor is met by definition.  LKH argues that Stanley has presented no evidence that Hall ever actually effectuated a tangible employment action.  After the consensual relationship between Stanley and Hall ended in February of 2002, it is undisputed that Stanley continued on in her employment and in fact received two raises.

Stanley argues that her dismissal, subsequent to Hall's acquisition of Sandstone in its entirety and his termination of the contract with LKH, constitutes a tangible employment action sufficient to allege a quid pro quo violation of Title VII.  LKH counters that all of its employees were dismissed and invited to reapply for their positions after Hall bought out his Sandstone co-owners.  Stanley alleges that she received different treatment, relying on the deposition of one of the co-workers who testified that he was never dismissed and continued working for LKH.  This is a material factual dispute. But, even assuming that Stanley received different treatment than similarly situated co-workers, she does not dispute that she received a letter to reapply

with Hall.  Further, Stanley does not dispute that all employees that chose to reapply regained their positions.  Stanley chose not to reapply.

The Eighth Circuit has held that a transfer offer, when for a comparable position in a different location, is not an adverse action for Title VII purposes. Gartman v. Gencorp, Inc., 120 F.3d 127, 130 (8th Cir. 1997).  In this case, Stanley was invited to reapply for the same position under new ownership. Every indication, including a personal phone call from Hall, suggests that she would have regained the position.  Under the facts of this case, the option provided to Stanley is analogous to a transfer offer and therefore is not a "tangible employment action."  Accordingly, LKH's motion for summary judgment on Stanley's Title VII claim alleging quid pro quo sexual harassment is granted.

### ii.    Hostile Work Environment

In the alternative, Stanley claims that the alleged harassment was so severe or pervasive as to alter a term, condition, or privilege of employment. The Eighth Circuit requires a high threshold to be met in order for a plaintiff to successfully allege a hostile work environment claim:

> The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment.  "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview."

23

Scusa, 181 F.3d at 966.

The court in Scusa noted a number of factors a court should consider, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 967 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

Stanley alleges a significant number of incidents that occurred while she worked at the Sandstone Ridge Apartments.  Hall allegedly called Stanley a variety of derogatory names.  Hall's business partner, Mike Tennyson, testified that "fucking cunt" was Hall's favorite nickname for Stanley.  Stanley alleges, and Hall admits in part, that at one point he broke into the vehicle Stanley was using and destroyed her property.  Stanley alleges further instances of physical abuse, and that on numerous occasions Hall attempted to gain entry to her apartment.  All of these incidents occurred at Sandstone Ridge Apartments, the place of Stanley's employment.

"The issue under Title VII is whether the work environment was both objectively and subjectively offensive, that is, one that a reasonable person would find hostile or abusive." Scusa, 181 F.3d at 967.  Applying this test, the court finds that Stanley has alleged sufficient evidence that, if proven, would

24

support a finding that the behavior of Hall was so severe or pervasive as to alter a term, condition, or privilege of employment.

Sandstone argues that even if an actionable level of sexual harassment occurred, it is not liable because it took prompt remedial action to address any complaints made by Stanley. An employer has an affirmative defense to a hostile work environment claim if it can prove:

> (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

Burlington Indus., 524 U.S. at 765.

LKH argues that it consistently took prompt remedial actions to correct any of Stanley's concerns. Stanley argues that LKH's failure to have a sexual harassment policy in place made it impossible for her to know the proper procedure to follow to report her complaints. In determining whether an employer has successfully alleged an affirmative defense, "proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law." Id. at 765. Although not strictly required, without the existence of a sexual harassment policy, a question of fact exists as to whether Stanley failed to take advantage of corrective opportunities in accordance with the second prong and whether LKH exercised reasonable care in responding to Stanley's oral complaints.

25

Because Stanley has successfully made out a prima facie case for all of the requisite elements of a hostile work environment claim and questions of fact exist as to the affirmative defense, LKH's motion for summary judgment with regard to the hostile work environment claim under Title VII is denied.

### 2.    Retaliation

In her second amended complaint, Stanley alleges a claim for retaliation. Title VII prohibits an employer from discriminating against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a). In its motion for summary judgment, LKH argues that the facts as alleged by Stanley do not make a prima facie showing of retaliation.  Stanley does not respond to the arguments of LKH with regard to her retaliation claim.

There are three essential elements to a retaliation claim:

(1)    she engaged in statutorily protected participation;
(2)    her employer subsequently took an adverse employment action; and
(3)    the adverse action was causally linked to her protected activity.

Palesch v. Missouri Comm'n on Human Rights, 233 F.3d 560, 569 (8th Cir. 2000).

In its motion for summary judgment, LKH argues that Stanley never made a complaint to indicate to it that she was engaging in statutorily protected participation (i.e., filing a Title VII complaint).  LKH argues that the

complaint was first made by Stanley *only after* she had already been given notice that her position with LKH was terminated.  Therefore, because LKH did not know that Stanley believed she was engaging in statutorily protected activity, it could not have retaliated.

Stanley does not respond to this argument or indicate to the court upon what basis her retaliation claim is based.  LKH has put forth sufficient evidence to show that there is no material issue of fact on the retaliation claim.  The burden therefore shifted to Stanley to set forth specific facts to show that a genuine issue exists.  Kraft Foods, Inc., 285 F.3d at 691.  Because Stanley has not met this burden, the motion for summary judgment on the Title VII retaliation claim by LKH is granted.

**II.      State Law Sexual Harassment Claims**

Stanley alleges a claim against Hall, Sandstone, and LKH under SDCL 20-13-10, which states:

> **Employer's unfair or discriminatory practices**
>
> It is an unfair or discriminatory practice for any person, because of race, color, creed, religion, sex, ancestry, disability, or national origin, to fail or refuse to hire, to discharge an employee, or to accord adverse or unequal treatment to any person or employee with respect to application, hiring, training, apprenticeship, tenure, promotion, upgrading, compensation, layoff, or any term or condition of employment.

The South Dakota Supreme Court, in interpreting SDCL 20-13-10, has noted that the statute is "comparable to the corresponding provision in Title

27

VII" and has interpreted the statute in accordance with federal case law construing Title VII.  Huck v. McCain Foods, 479 N.W.2d 167, 169 (S.D. 1991).

**A.     Hall**

Hall argues that the claim against him under SDCL 20-13-10 should be dismissed for reasons similar to the claim against him under Title VII, namely that he is not an employer and therefore not liable under the act.  Stanley does not respond to this argument.

The South Dakota Supreme Court has not yet reached the issue of whether SDCL 20-13-10 gives rise to individual liability.  "When a state's highest court has not addressed the precise question of state law that is at issue, a federal court must decide 'what the highest state court would probably hold were it called upon to decide the issue.'" Lenhardt, 55 F.3d at 379.

SDCL 20-13-10 prohibits any "person" from acting in a discriminatory manner.  Nonetheless, when read in context it seems clear that the statute is directed at employers.  First, the caption for SDCL 20-13-10 indicates that it was meant to cover "Employer's unfair or discriminatory practices."  Second, the statute prohibits discrimination against an "employee."  SDCL 20-13-1(6) defines "employee" as "any person who performs services for any employer for compensation, whether in the form of wages, salary, commission, or otherwise."  In turn, "employer" is defined as "any person within the State of

28

South Dakota who hires or employs any employee." SDCL 20-13-1(7). Under the clear language of the statute, the intent of the South Dakota Legislature was to create liability for employers who violate the act, rather than individuals.

This interpretation is consistent with the South Dakota Supreme Court's likely interpretation if it were to reach the issue. The South Dakota Supreme Court has previously stated that SDCL 20-13-10 is comparable to Title VII, and it has construed the statute in accordance with Title VII law. Huck, 479 N.W.2d at 169. When faced with a similar issue, the Eighth Circuit construed an analogous provision under Missouri law to give rise only to employer rather than individual liability. Lenhardt, 55 F.3d at 380 (holding that although the Missouri statute defined the term "employer" in a slightly different fashion than Title VII, because Missouri courts had previously considered Title VII case law in construing its civil rights statute, Missouri courts would likely construe the definition of "employer" in accordance with federal case law).

As with the Title VII claim discussed above, Stanley was never in Hall's individual employ. Therefore, the court finds that she cannot succeed as a matter of law on her claim against Hall under SDCL 20-13-10 and summary judgment on that claim is granted.

29

**B.    Sandstone**

Sandstone similarly argues that it was not Stanley's employer and therefore is not liable under SDCL 20-13-10.  Sandstone argues that because Sandstone never directly hired Stanley, nor directly paid Stanley, it is not Stanley's employer.

By Sandstone's own assertions, when Hall directed Stanley in the operation of the Sandstone Ridge Apartments, he was acting in his capacity as a shareholder in Sandstone.  Further, the management contract with Sandstone explicitly states that those employees living on the property are Sandstone employees.  Although Sandstone did not hire Stanley directly, Stanley did perform services that benefitted Sandstone.  Under these facts, the court finds that there is a material issue of fact regarding whether or not Stanley was employed by Sandstone.

Sandstone further argues that even if Stanley is characterized as one of its employees, the alleged activity is not actionable as a matter of law under SDCL 20-13-10.  To prevail on a sexual harassment claim under SDCL 20-13-10, a plaintiff must prove the same elements as in a claim under Title VII.  Huck, 479 N.W.2d 167, 169-70 (citing the elements laid out by the Eighth Circuit in Hall v. Gus Constr. Co., 842 F.2d 1010 (8th Cir. 1988)).  As discussed above with regard to the motion for summary judgment on the Title VII claims against LKH, Stanley has alleged sufficient evidence to create a

30

material issue of fact as to whether Hall's activity was in violation of Title VII. Therefore, Sandstone's motion for summary judgment on Stanley's claim under SDCL 20-13-10 is denied.

### C.    LKH

LKH argues that Stanley cannot prevail as a matter of law on her claim that Hall's activities rise to the level of actionable harassment under SDCL 20-13-10.  As discussed above with regard to the motion for summary judgment on the Title VII claims against LKH, Stanley has alleged sufficient evidence to create a material issue of fact as to whether Hall's activity was in violation of Title VII.  Therefore, LKH's motion for summary judgment on Stanley's claim under SDCL 20-13-10 is denied.

### III.    Other State Law Claims

Stanley alleges ten additional civil claims, both against Hall individually and LKH and Sandstone under a theory of vicarious liability.  Defendants move for summary judgment on the majority of these claims.  Stanley in large part opposes those motions.

### A.    Invasion of Privacy

The first cause of action alleged by Stanley is a claim for invasion of privacy.  "To recover on an invasion of the right to privacy claim, a claimant must show an 'unreasonable, unwarranted, serious and offensive intrusion upon the seclusion of another.' " Roth v. Farner-Bocken Co., 667 N.W.2d 651,

660 (S.D. 2003) (quoting <u>Kjerstad v. Ravellette Publ'n, Inc.</u>, 517 N.W.2d 419, 424 (S.D. 1994).

Stanley alleges that a number of actions by Hall give rise to an invasion of privacy, namely:  that Hall repeatedly looked into her apartment window, that Hall attempted to gain entry into her apartment, and that Hall repeatedly drove back and forth in front of Dave Gustafson's house while she was there. Defendants claim that these incidents do not support a finding of invasion of privacy.

A person does have a reasonable expectation of privacy in her own home.  <u>See, e.g.</u>, <u>State v. Tullous</u>, 692 N.W.2d 790, 792 (S.D. 2005). Attempting to enter into Stanley's apartment and peeking in her window are incidents that, if proven, could provide sufficient evidence for an invasion of privacy claim.  There exists sufficient evidence in the record to support these allegations, and therefore Hall's motion for summary judgment on the invasion of privacy claim is denied.

LKH and Sandstone argue that even if Stanley's allegations are sufficient to defeat a summary judgment motion, they are not liable under a theory of vicarious liability.  "It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment."  <u>Meyer v. Holley</u>, 537 U.S. 280, 285, 123 S. Ct. 824, 154 L. Ed. 2d 753 (2003); <u>Deuchar</u>

32

v. Foland Ranch, Inc., 410 N.W.2d 177, 180 (S.D. 1987).  The South Dakota

Supreme Court, in Leafgreen v. American Family Mutual Insurance, 393

N.W.2d 275, 280-281 (S.D. 1986), adopted the "foreseeability test" to

determine whether an agent's acts can be attributed to his employer under the

doctrine of respondeat superior:

> We think it fairly stated that a principal is liable for tortious
> harm caused by an agent where a nexus sufficient to make the
> harm foreseeable exists between the agent's employment and the
> activity which actually caused the injury; foreseeable is used in
> the sense that the employee's conduct must not be so unusual or
> startling that it would be unfair to include the loss caused by the
> injury among the costs of the employer's business.

Id. at 280-81; see also Deuchar, 410 N.W.2d at 181.

In Deuchar, the South Dakota Supreme Court addressed the question of

whether a farmhand who took deer hunters on an unauthorized hunting trip

on the employer's ranch land was acting within the scope of his employment.

Id. at 178-81.  In reversing the trial court's grant of summary judgment in

favor of the employer, the court stated, "[t]his Court has specifically held that

the question of whether the act of a servant was within the scope of

employment must, in most cases, be a question of fact for the jury."  Id. at 181

(citing Lovejoy v. Campbell, 92 N.W. 24 (S.D. 1902)).

Under the foreseeability test as set forth in Leafgreen, there exists

material issues of fact regarding whether the acts of Hall give rise to liability

for LKH and Sandstone.  Hall had an ownership interest in both entities, and

the entities were aware that he was living at Sandstone and exerting some form of managerial control over Stanley.  Further, both entities were aware of Hall's past behavior, and specifically his behavior towards Stanley.  Under these facts, there exists a sufficient nexus between Hall's position as an on-site property owner and the tortious acts he is alleged to have committed at Sandstone Ridge and other places.  Whether or not the acts that allegedly give rise to a claim for invasion of privacy also give rise to vicarious liability under the foreseeability test is therefore a question of fact for the jury.  Accordingly, summary judgment for LKH and Sandstone on the invasion of privacy claim is denied.

### B.      Civil Battery and Civil Assault

The fourth and fifth causes of action alleged by Stanley are claims for civil battery, and in the alternative, civil assault.  All defendants argue, and Stanley does not dispute, that a civil action for assault or battery must be commenced within two years after the cause of action has accrued.  See SDCL 15-2-15(1).

Defendants admit that one incident, namely an alleged event after a Christmas party in 2001, could give rise to a colorable claim for civil battery and assault.  In her response to the summary judgment motion, Stanley argues that there are other actionable instances, but she does not specifically set forth what they are.  Rule 56(e) makes clear:

34

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Because Stanley has not set forth specific facts, in either the second amended complaint or in her response to the summary judgment motion, in support of any incidents in addition to the one conceded by defendants, defendants' motion for partial summary judgment is granted.

LKH and Sandstone argue that even if an assault claim exists against Hall, they are not vicariously liable.  For the reasons set forth above with regard to the invasion of privacy claim, the court finds that there exists a material issue of fact as to whether the actions of Hall give rise to vicarious liability under the foreseeability test.  Accordingly, the motions for summary judgment made by LKH and Sandstone are denied with regard to the assault claim.

**C.     Interference With a Business Relationship**

The sixth cause of action alleged by Stanley is a claim for interference with a business relationship.  Stanley does not oppose defendants' motion for summary judgment and the motion is therefore granted.

### D.  Fraud and Deceit

The seventh cause of action alleged by Stanley is a claim for fraud and

deceit.  Stanley alleges that Hall made fraudulent and deceitful statements

regarding her future employment and ownership interest in Sandstone.  In her

second amended complaint, Stanley did not set forth the specific actionable

statements.  South Dakota law requires that "[i]n all averments of fraud or

mistake, the circumstances constituting fraud or mistake shall be stated with

particularity."  See SDCL 15-6-9(b).  In her response to the motion for

summary judgment, Stanley alleges that Hall lied regarding his purpose in

buying out his Sandstone partners and also about terminating the contract

with LKH.  Stanley also alleges that Hall is perpetuating his fraud through

repeated attempts to influence testimony and tamper with witnesses.

> Fraud is a representation made as a statement of fact,
> which was untrue and known to be untrue by the party making it,
> or else recklessly made.  Further, that it was made with the intent
> to deceive and for the purpose of inducing the other party to act
> upon it.  And, also that the other party did in fact rely and act
> upon the false statement to his injury or damage.

Brandriet v. Norwest Bank South Dakota, 499 N.W.2d 613 (S.D. 1993).

Throughout her response to defendants' motion for summary judgment,

Stanley at no point discusses the elements of a claim of fraud, nor explains

why the statements made by Hall constitute actionable fraud.  Furthermore,

Stanley has not demonstrated, or even argued, that she relied upon Hall's

statements in any manner.

36

Stanley further argues that Hall perpetrated fraud through his alleged attempts to "influence testimony and tamper with witnesses." Plaintiff's response (Docket 96) at 19. Stanley again fails to explain how this conduct, even if assumed to be true, meets the elements required for a fraud claim.

Stanley does not argue in her response any specific instances of deceit.

Defendants have put forth sufficient evidence to show that there is no material issue of fact on the fraud and deceit claim. The burden therefore shifted to Stanley to set forth specific facts to show that a genuine issue exists. Kraft Foods, Inc., 285 F.3d at 691. Because Stanley has not met this burden, defendants' motion for summary judgment on Stanley's claim for fraud and deceit is granted.

### E.    Slander

The eighth cause of action alleged by Stanley is a claim for slander. Stanley does not oppose defendants' motion for summary judgment on the claim, and the motion is therefore granted.

### F.    Stalking

Stanley alleges that the acts of Hall amounted to stalking. The South Dakota statute on stalking states:

No person may:

(1)    Willfully, maliciously, and repeatedly follow or harass another person;

37

      (2)     Make a credible threat to another person with the intent to place that person in reasonable fear of death or great bodily injury; or

      (3)     Willfully, maliciously, and repeatedly harass another person by means of any verbal, electronic, digital media, mechanical, telegraphic, or written communication.

SDCL 22-19A-1.

Stanley identifies numerous acts that she contends constitute stalking, including cutting in front of her on a public street, repeatedly going to her apartment door and attempting to gain access, calling her on her phone, and taking a photo of her while she was at the pool at Arrowhead Country Club.

Defendants argue that the incidents that are alleged to have occurred do not rise to a level of stalking. Based upon the allegations made by Stanley, the court finds that she has alleged sufficient evidence for a jury to find that Hall's conduct rose to the level of stalking. Therefore, with respect to Hall, the motion of summary judgment on the claim of stalking is denied.

LKH and Sandstone argue that even if a stalking claim exists against Hall, they are not vicariously liable. For the reasons set forth above with regard to the invasion of privacy claim, the court finds that there exists a material issue of fact as to whether the actions of Hall give rise to vicarious liability under the foreseeability test. Accordingly, the motions for summary judgment made by LKH and Sandstone are denied with regard to the stalking claim.

38

### G.    Witness Tampering

The tenth cause of action alleged by Stanley is a civil action for witness tampering.  Stanley cites SDCL 22-11-19 as a basis for this claim.  SDCL 22-11-19 is a criminal statute.  In support of the claim, Stanley points only to Truxes v. Kenco Enterprises Inc., 119 N.W.2d 914, 916 (S.D. 1963), which held that "the common law of [South Dakota] is not so limited, but is flexible and susceptible of adaptation to the needs and demands of changing times." In Truxes, the plaintiff argued that a cause of action for an invasion of privacy right should be recognized at common law, not because it was based on a criminal statute.  Id.  After an extensive review of modern jurisprudence, the court concluded "that the right of privacy has a foundation in the present day common law and is supported by the weight of authority" and therefore held that "an action in this jurisdiction may be maintained for invasion of such right."  Id. at 109.

Stanley has pointed the court to no authority, foreign or academic, which suggests the existence of a common law cause of action for witness tampering.  In fact, other jurisdictions have held that a civil cause of action for witness tampering does not exist.  See Martian Entm't v. Harris, 2006 WL 2167178 (N.Y. Sup. 2006) (unpublished) ("there is no separate civil cause of action for witness tampering").

39

South Dakota has held that "[t]he violation of a statute enacted to promote safety constitutes negligence per se." See, e.g., Baatz v. Arrow Bar, 426 N.W.2d 298, 300 (S.D. 1988). SDCL 22-11-19, however, is not a safety statute, and it therefore does not give rise to liability on that basis. See San Benito Bank & Trust Co. v. Landair Travels, 31 S.W.3d 312, 321-22 (Tex. App. 2000) (holding in part that state and federal statutes regarding witness tampering do not create a statutory duty from which a negligence per se cause of action would arise).

Additionally, the Iowa Supreme Court has said, "[t]he rule generally throughout the country is that a criminal statute gives rise to a civil cause of action if and only if that appears by express terms or by clear implication to have been the legislative intent." Hall v. Montgomery Ward & Co., 252 N.W.2d 421, 423 (Iowa 1977). SDCL 22-11-19 does not include a civil cause of action, and creation of one does not appear to be the clear intent of the legislature.

Whether or not a civil cause of action exists for a claim of witness tampering is an issue of first impression in South Dakota. "When a state's highest court has not addressed the precise question of state law that is at issue, a federal court must decide 'what the highest state court would probably hold were it called upon to decide the issue.' " Lenhardt, 55 F.3d at 379. Because no authority exists to support such a claim, the court finds it unlikely that the South Dakota Supreme Court would recognize a civil cause

40

of action for witness tampering.  See Corbly v. Matheson, 335 N.W.2d 347, 348 (S.D. 1983) (rejecting an argument as a "bald assertion" without any supporting authority).  Therefore, defendants' motion for summary judgment on Stanley's claim for witness tampering is granted.  Accordingly, it is hereby

ORDERED that Hall's motion for summary judgment on employment law claims (Docket 55) is granted.

IT IS FURTHER ORDERED that LKH's motion for summary judgment on employment law claims (Docket 57) is granted in part and denied in part as set forth in this order.

IT IS FURTHER ORDERED that Sandstone's motion for summary judgment on employment law claims (Docket 59) is granted in part and denied in part as set forth in this order.

IT IS FURTHER ORDERED that defendants' motion for summary judgment regarding fraud and deceit (Docket 69) is granted.

IT IS FURTHER ORDERED that defendants' motion for summary judgment regarding invasion of privacy (Docket 72) is denied.

IT IS FURTHER ORDERED that defendants' motion for summary judgment regarding stalking (Docket 74) is denied.

IT IS FURTHER ORDERED that defendants' motion for summary judgment regarding witness tampering (Docket 76) is granted.

IT IS FURTHER ORDERED that defendants' partial motion for summary judgment regarding civil battery and assault (Docket 78) is granted in part and denied in part as set forth in this order.

IT IS FURTHER ORDERED that defendants' motion for summary judgment regarding slander (Docket 80) is granted.

IT IS FURTHER ORDERED that defendants' motion for summary judgment regarding interference with a business relationship (Docket 82) is granted.

Dated October 31, 2006.

BY THE COURT:

/s/ Karen E. Schreier
KAREN E. SCHREIER
CHIEF JUDGE